that's correct your honor good morning you can hear us I take it we can hear you fine yes I can we can hear you and see you so please proceed with appellants argument thank you your honor and may it please the court my name is Bill hooks I am here today representing Thomas O'Neill we have raised essentially forgive me I would like to reserve perhaps a minute for rebuttal we have raised essentially two sentencing arguments in our brief and we argue that the court the sentence imposed by the district court should be reversed for two reasons I will devote the bulk of my comments this morning to the first of those two reasons which is that the method chosen by the district court to compute the amount of actual loss attributed to Mr. O'Neill's conduct is incorrect doesn't matter whether it's applied the rule that the court should impose the higher of actual or intended loss and the argument was that the actual loss established by the government's expert of a little over $300,000 was the amount that should be attributed to Mr. O'Neill's conduct is actual loss I understood that that the expert took the difference between the market value in the securities and what their basis was at the time that he looked at it is that right essentially that's correct your honor the government's expert Ms. Egan established on her own a starting date for when she believed that the unauthorized transactions occurred and so there were different starting dates for each of the nine accounts and then she took or assessed the value of the various portfolio or securities on each of those unique starting dates and valued at the end period that was determined that Mr. O'Neill either relinquished or was stripped of his control over the account what what's wrong with that that basis for calculation what's wrong with that your honor fundamentally is that that method of calculation attributes the entirety of the loss if there is a loss and there was in this case unrealized loss to Mr. O'Neill without any consideration of any other factors such as the defendants expert John Marquis articulated for the sentencing court factors such as market volatility which have to be factored in cases that this court has handed down United States vs. Hicks US v. West Coast aluminum heat treating establish a causation requirement for determining the amount of loss it doesn't have to be reduced to an exact nickel-and-dime calculation but there has to be a truly did or intended to cause in terms of loss and this seems if it's market volatility or something else I suppose the government can always answer well you know you're the defendant put this victim into these stocks and if it's part volatility and it's part something else so what I but it seems to me the question that wasn't answered was how much loss would have occurred if the unauthorized transaction had never taken place in other words I was in this stock he wasn't authorized to put me into this one and it went down well how much did my other go down I assume there was no deduction in the total amount for that I don't believe there was your honor and the first linchpin of causation was established in that the mr. O'Neill's former clients could say if he had not purchased to these stocks or sold these stocks if he had not engaged in these transactions I would not have been in this position but that's only one part of I think a two-part causation test there has to be a proximate causation a legal causation in addition to this but for causation hold on a moment my understanding is a little different than judge Canby's although I might have missed something on this I thought that all of the losses that were estimated by the expert were in stocks that had been bought by the broker without the clients approval is that is that false or is that true that was the matter in dispute that touches somewhat on this though is it I mean were there losses calculated in stocks that the account holders had authorized the purchase of I have to answer it in kind of a long-winded fashion mr. O'Neill was subject to a consent agreement with the state of Montana auditors office the that control stock brokerages in Montana and that consent agreement provided certain conditions for which for a period of time that mr. O'Neill would be subject to one of those had to do with supervision by the branch manager for a period of time over the transactions that mr. O'Neill was conducting for his clients so the clients testified that the transactions were in fact unauthorized but not to put too fine a point to the government's experts had a different take on this and I think this gives rise to some confusion she looked at the transactions in common stocks and whether they were authorized or unauthorized she excluded from her consideration transactions in mutual funds which she deemed authorized I apologize for interrupting no but you just said transactions in common stocks whether they were authorized or not but I thought you just said that all the stocks were that on which damages were calculated were unauthorized well that was the government's approach that they were all unauthorized but whether they were whether all of the transactions were authorized or unauthorized was a point in dispute because mr. O'Neill contends that while he was under the period of special supervision as a part of this consent agreement that the trades were in fact not okay I understand that but they were all unauthorized when they got into these stocks that was the government's contention and that is what the clients testified did your client dispute that that they were all unauthorized at the outset putting aside what the significance is of the period of supervision no no he did not dispute that apart from the period of supervision he acknowledged in his plea and in the plea proper that unauthorized transactions were engaged in by him the government makes an argument that wholly apart from this issue there were over $200,000 in commissions that clearly were losses and that once the $200,000 level is met the offense level would have been the same anyway in other words they're saying even if even if you're clearly right on your total loss calculation it's harmless because clearly the commissions were losses if the transactions were unauthorized and the commission's total over $200,000 that is correct your honor under the government's theory if you if one is to get away from the actual loss the 300 plus thousand then the intended loss would be I believe 212,000 from the commission's fees and I believe margin interest and that puts you into the same offense level that you wound up with I think it would put us in the same offense level with the intended loss but the government's argument below and that adopted by Judge Malloy in sentencing was that there was an actual loss which was much higher and so we're challenging the court's methodology for computing the loss I don't believe that the judge did find that there was an intended loss I don't understand I think the government's argument is that the offense level you your client actually got he would have received if there's a $212,000 that is correct your honor that is the government's argument well that's not just the government's argument is it true or not if it is true your honor if the government's methodology is correct the defendant's expert gave a different methodology offered a different  actual loss or an intended loss far less than what the government's expert recommended which would put my client in a different sentencing range what was the defense expert's calculation of commissions interest and margin cost your honor I don't believe that Mr. Markey came up with a separate correct so therefore if the court is wrong in failing to deduct the market loss on what would have happened if the market loss on what would have happened had there been no churning the alternate basis of the government which is the actual financial loss because of commission's interest and other charges stands alone as an alternate basis for actual loss true your honor I don't know that it would stand as a basis for actual loss or for intended loss well no I mean the computation of commissions interest and margin costs interest and margin interest is not an intended loss it's an actual loss it's an other way of figuring actual loss isn't it I think I civil litigation I understand your point your honor I think the government argued that that $212,000 figure was intended loss so I think that's the way they argued it okay thank you thank you thank you sir okay we'll proceed with the government may it please the court my name is Kurt Almey and I represent the United States from listening to the questions of the panel I would agree with the government you've accurately articulated the government's position whether it's actual loss or intended loss the loss of this case still fell between $200,000 and $350,000 therefore the guideline range would be the same addressing the defendant's argument on actual loss he claims that we did not adequately prove causation that we did not prove that other factors like market volatility didn't cause the value of the stock to drop he relies primarily on the case of the United States vs. Olas but also others now those cases are fraud on the market cases and those are distinguishable from the case that we have in front of us with with a fraud on the market case an investor purchased stock later a misrepresentation is situation the burden is on the government to prove that the decline in the value of the stock is related to the actions of the defendant and not some other factor but that is not this case in this case the defendants were invested primarily in lower risk investments the defendant sold some of those investments and purchased unsuitable higher risk investments so the key distinction is the defendants in Olas knew what they were buying where the defendants in this case did not know what the broker was buying for them and did not know that their risk level had gone up but you will agree with you know this Mr. Almey you will agree with you not that evidence of what the nice safe mutual funds and fixed securities might have done fixed income securities might have done in the period ending in March 2001 when the market fell out of bed from January 2000 to 2001 the Nasdaq went from 5,000 to 1,200 and the Dow Jones went south from 11,500 to 7,000 they would have lost money anyway even if they'd stayed in the stock and mutual funds that they had wouldn't that shouldn't that be deducted from the loss attributed in the actual loss computation your honor I don't believe that it is certain that they would have dropped in value over the entire time period we're talking about time period in some cases from the beginning of 1997 through March 2001 and it would you're right your honor it would depend if it is relevant to look at what the mark what would have happened if they were stayed in their investments however the of computing that was was very difficult and looking at the Nesbitt versus McNeil case and the unsuitability of these trades the expert calculated the loss based on what actually happened in the market again these victims were subjected to market risk that they didn't bargain for unlike victims or clients and fraud on the market cases addressing the issue of intended loss the defendant argues I believe that since his clients could make a profit or the defendant intended that his clients would make a profit from the trading that he did not intend to cause them loss however even if the value of an investment account goes up that doesn't mean that a person still can't have loss for instance if a broker would have for Commission's purposes bought and sold and bought and sold Microsoft stock between 1996 and 1999 the client may still have made money but he would have lost money compared to where he would have been if the broker had simply bought and held the Microsoft stock for him over that time period and so Commission's fees and margin interest are relevant here now the defendant does argue that or he may argue that he back and forth in various stocks primarily technology stocks and so maybe he thought he was going to make up those Commission's and fees however if you take a look at Michael path houses account that client paid about fifty six thousand dollars in Commission's and fees ten thousand dollars in margin interest and he watched his account drop from a balance of forty thousand to a he paid out one and a half times to Piper Jaffrey what he invested in the account and he ended up with nothing was there any alternative calculation of fees costs and interest offered other than the government's that comes to about two hundred and thirteen thousand I do not recall that there was your honor not on that component there were some different calculations on market loss but not on fees interest and Commission's the defendant also argues as a matter of fact that he did not make unsuitable trades however I direct the court's attention to pages 67 of the brief and I think the evidence set forth there shows that it was not clear error for the district court to find that the trades were unsuitable similarly the defendant argues as a matter of fact that he did not make unauthorized trades during the time period of special supervision by his employer again taking a look at the evidence summarized on pages five and six of the government's brief we believe the district court did not clearly error in making that finding Mr. Olney, may I interrupt you for a second it wasn't mentioned in the the enhancement for abuse of trust is piling on because the charge here is wire fraud and fraud is a type of abuse of trust certainly your honor the defendants arguing the United States versus Trask shows that since there was a securities fraud count that is by definition abuse of trust is in the statutory definition of that crime what's different between this case and Trask however as you mentioned is this case also has a wire fraud count wire fraud does not have abuse of trust as part of its statutory definition and I direct your attention to the Tenth Circuit case in United States versus Queen that held that the elements of mail fraud do not require the government to prove the wire fraud are in every material respect the same so pursuant then to the grouping rules under the guidelines we have two counts and the wire fraud count clearly can have abuse of trust added to it so even if securities fraud does not have abuse of trust added to it when the two accounts are grouped the offense level for the higher count in this case wire fraud would control so it doesn't matter that the offense level for securities fraud does or does not have abuse of trust added to it wire fraud alone will control abuse of trust but even if that wasn't the case your honor even if wire fraud hadn't been charged United States versus Trask doesn't apply because it's a churning case now the defendant says on the one hand we analogize to the civil churning for loss purposes and on the other hand we say that you can't analogize to Trask which is a civil churning case for abuse of trust purposes and he's correct in that distinction and the reason your honor for that distinction is because it's the defendants conduct that's relevant to the analogy for loss purposes but it's the actual statutory definition of the offense that's relevant under Trask for abuse of trust purposes for loss purposes as we've already discussed the defendants conduct is similar to the churning in Nesbitt but for abuse of trust purposes Trask is relevant to churning but it doesn't it doesn't mean that abuse of trust happens in every case where there's security fraud by unauthorized trading which is what happened here I direct the court's attention to United States versus Hart a Third Circuit case that explained that not all brokers involved with fraudulent sale of securities occupy a position of trust under the guidelines for example there are brokers who mechanically execute trades requested by customers thus unauthorized trades in such a circumstance would not constitute an abuse of trust and therefore the statutory definition of securities fraud for unauthorized trading is charged here does not require the government to prove that the fraud constituted an abuse of trust your honor reasonableness was also raised by the defendant under Booker I won't touch on that unless you have any particular questions I would just conclude that the methodology for determining loss in this case was proper moreover the district court did not clearly err in finding that the defendant made unauthorized trades during the period of supervision and that the trades were unsuitable thus the district court did not abuse its discretion in determining loss or applying enhancement for violation of prior specific administrative order or of abuse of trust and finally your honor I think a record the record reflects that the court considered all the factors set forth in section 3553 a and the sentence imposed which was approximately one-third below the advisory sentencing guidelines was reasonable a thank you mr. all me mr. hooks do you have a few comments to make mr. all me attempts to distinguish the cases on which we rely in terms of the causation arguing that the theory upon which we rely applies only to fraud on the market type cases we do rely on united states versus all less a fifth circuit case but all is relied upon the principles espoused by this and in west coast aluminum so we're not arguing that this is a fraud on the market case but I think that distinction is one without a difference in this case all less in a criminal fraud case apply the theories of causation aided in some part by the United States Supreme Court's recent articulation of the proper causation theories in the dura pharmaceuticals case so we are not arguing that this case factually is a fraud on the market case like all this was we're relying on the principles espoused in all this and in the other decisions of this court mr. Marquis the defendants experts did contest the notion that these trades were unsuitable mr. Marquis with his experience as a broker in Montana testified about the suitability of many of these trades your time is up so if you could conclude within the next minute that would be appreciated thank you your honor I will conclude simply by noting that in the government's own analysis of six of the nine accounts realized a gain a realized gain this is not a case where they were all totally left bereft there were certainly damages but this is a situation in which market volatility played a critical role and the government's methodology that which was adopted by the court failed to appropriately take into account the other factors and for that reason respectfully the methodology was incorrect and the case should be remanded thank you thank you sir we thank mr. Hooks and mr. Almey for their arguments and United States versus O'Neill shall be submitted
judges: Canby, Gould, Bea